MATTER OF RIOS-CARRILLO

In DEPORTATION Proceedings

A-13568545

*Decided by Board November 6, 1963*

An alien agricultural worker who remains in the United States beyond the period
for which he was admitted under the provisions of Title V, Agricultural Act of
1949, as amended, is deportable under section 241(a)(2), Immigration and
Nationality Act. [Note: The alien in this case is also the subject of Int. Dec.
No. 1288.]

CHARGES:

Order: Act of 1952—Section 241(a)(9) [8 U.S.C. 1251(a)(9)]—Failed to
comply with conditions of status of agricultural worker under which
admitted to the United States.

Lodged: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Remained
longer after temporary admission as an agricultural laborer.

To simplify the discussion and for administrative convenience, this
case, one of three the special inquiry officer heard and decided
jointly, will be separately considered. (The other cases are Rogelio
Avila-Valdez—A-13568544 and Jose Salud Guiterrez-Serrato—
A-13569146.) The case is before us by certification. The special in-
quiry officer has found the respondent deportable upon the lodged
charge and has granted him voluntary departure. No change will
be made in the special inquiry officer's order.

A full statement of the facts has been made previously. Briefly,
the Service charges that respondent, a 26-year-old single male alien,
a native and citizen of Mexico, was admitted to the United States as
an agricultural worker on May 3, 1962 for a period ending June 14,
1962, that recontracts, and a provision of the agreement between the
Republic of Mexico and the United States authorized him to remain
until January 4, 1963, and that he has remained beyond January 4,
1963 without permission.

The case was before us previously on appeal from the special inquiry
officer's order sustaining the charge in the order to show cause. We
reopened proceedings because of the conflict found in the fact that

380

although the order to show cause arraigned the respondent as a *nonimmigrant*, the evidence of record revealed that in a collateral proceeding the Service had ruled that respondent was *not* a nonimmigrant. At the reopened hearing, the Service abandoned the charge in the order to show cause and lodged a new charge which does not allege that the respondent is a nonimmigrant. The new charge alleges that respondent entered as an agricultural laborer. The special inquiry officer sustained the lodged charge finding that the respondent had entered the United States as an agricultural laborer, and that he had remained in the United States longer than permitted by the law and regulation relating to admission of agricultural workers.[1]

Counsel's first contention is that the respondent is not in an illegal status. His argument is that respondent having been admitted as a nonimmigrant, and having applied to the District Director for a change of status to which as a nonimmigrant he was legally entitled, and his application having been denied on the erroneous ground that he was not a nonimmigrant, must be regarded as legally in the United States. The obvious answer to counsel's contention is that since the denial of the application for a change of status is not subject to further administrative review and it has not been judicially set aside, respondent can derive no legal benefit from the fact that he filed the application.

The question whether respondent is a nonimmigrant is no longer an issue. The Service withdrew the charge which applies to a nonimmigrant and substituted the charge that respondent is deportable as an agricultural laborer who remained longer than permitted. The issues arising out of the lodged charge are whether respondent is an agricultural worker, whether he has remained longer than permitted, and whether an agricultural worker who remains longer than permitted is deportable.

An issue is raised as to whether respondent entered as an agricultural worker. At the original hearing, counsel conceded that respondent had been admitted as an agricultural worker to December 20, 1962; at the reopened hearing counsel denied the additional allegation which accompanied the lodged charge and which stated that respondent had been admitted as an agricultural laborer under the Agricultural Act to January 4, 1963. Is the respondent an agricultural worker? For immigration purposes, an agricultural worker is a Mexican national recruited under the provisions of the Agricultural Act of 1949, as amended ((Agricultural Act), 63 Stat. 1051, as amended, 7 U.S.C. 1461–1468 (1958), as amended, 7 U.S.C. 1461–1468 (Supp. IV); Ex. R–4, pp. III–IV), pursuant to arrangements between the United

---

[1] The terms "agricultural laborer" and "agricultural worker" are used interchangeably by the Service and the special inquiry officer.

States and the Republic of Mexico to perform services or activities defined by law and who is admitted for such time and under such conditions as the Attorney General may specify (Agricultural Act, secs. 501, 505, 508, 7 U.S.C. 1461, 1464, 1467). The arrangements between the United States and the Republic of Mexico set forth the specific obligations of the employer and employee, and contain provisions to assure the worker wholesome working and living conditions and the retention of the fruits of his labor. These arrangements are embodied in the Migrant Labor Agreement of 1951, as amended (Agreement) (Ex. R-4, pp. 1-22), the Standard Work Contract, as amended (Contract) (Ex. R-4, pp. 23-34), and Joint Operating Instructions (Ex. R-4, pp. 35-51).

We have mentioned that the Agricultural Act provides that admission of the Agricultural worker is to be for such time and under such conditions as the Attorney General may specify. The Attorney General has issued no immigration regulation in regard to time limits, but sets the time within the following framework: workers are not to be made available for employment after December 31, 1963 (Agricultural Act, sec. 510, 7 U.S.C. 1461, note (Supp. IV)), no contract of less than six weeks may be entered into, extensions may be given for a minimum period of 15 days, stay for more than six months is not permitted except that under certain circumstances stay for up to nine months may be arranged (Ex. R-4, Agreement, pp. 10, 16; Contract, pp. 29, 31). The Attorney General has issued an immigration regulation setting the conditions of admission. The regulation states that admission is to be upon agreement of the agricultural worker to abide by three conditions; broadly speaking these conditions are: (1) the alien will engage only in specified employment, (2) the alien will depart upon the expiration of the period for which he is admitted, (3) he will carry the Form I-100C (which is to be issued to him upon admittance) while he is in the United States and will surrender it when he departs (8 CFR 214.2(k) (Supp. 1963); see Immigration and Nationality Act, sec. 103(a), 8 U.S.C. 1103 (1958)).

The record establishes respondent was admitted as an agricultural worker. Respondent was issued Form I-100C (Ex. 4) which is issued to agricultural workers; the form shows he was admitted "for employment as agricultural worker under Public Law 78 * * *" [Agricultural Act].

Respondent denies that he has remained longer than the period for which he was admitted. The record does not support this denial. Exhibit 4 reveals that respondent was admitted to June 14, 1962, that this period was extended on five occasions, and that the last extension was to December 20, 1962. The Service apparently concedes that

the respondent comes within article 9 of the Contract permitting a worker to be employed after the expiration of his contract for a period of not more than 15 additional days without being recontracted. Thus, the respondent's legal stay in the United States would not have extended beyond January 4, 1963. There is no evidence presented that an extension of time was granted beyond January 4, 1963. The claim that respondent has a right to remain in a legal status because he had filed an application (which was denied) for a change of status, or because he may have a visa application pending, or because the Board ordered reopening of proceedings is patently without foundation.

It is clear then that the period for which respondent was admitted expired on January 4, 1963. Having remained in the United States beyond the period for which he was authorized to stay, respondent is in the United States in violation of 8 CFR 214(k) (Supp. 1963) which provides that his admission was on condition that he would depart upon the expiration of the period for which he was admitted. Respondent's presence after January 4, 1963 is also in violation of the Agricultural Act for he is no longer maintaining the conditions set by the Attorney General, which the Agricultural Act requires him to maintain. Respondent is illegally in the United States.

We find that provisions of the Immigration and Nationality Act may be used for the expulsion of a Mexican worker illegally in the United States. The immigration law provides that an alien in the United States in violation of any law of the United States shall be deported (Immigration and Nationality Act, sec. 241(a) (2), 8 U.S.C. 1251(a) (2) (1958)). The procedure for the deportation of an alien in the United States in violation of law is set forth in section 242 of the Immigration and Nationality Act, 8 U.S.C. 1252 (8 CFR 242.8-242.21). This procedure is the "sole and exclusive procedure for determining the deportability of an alien." We think it is clear that respondent, a Mexican worker, in remaining in the United States in violation of the Agricultural Act and the regulation implementing it, is illegally in the United States. We think it is clear that his removal is required by section 241(a) (2) of the Act.

We shall proceed to discussion of issues raised by counsel as to whether respondent was properly notified of the charge against him, and whether a preliminary inquiry should not have been made under the terms of the Agreement between the United States and the Republic of Mexico before the machinery of the Immigration and Nationality Act could be utilized to deport respondent.

Provisions of the Immigration and Nationality Act and regulations concerning the notification of charges require that the alien be given notice of the nature of the charges against him (Immigration and Nationality Act, sec. 242(b), 8 U.S.C. 1252(b) (1958); 8 CFR 242.1

(1958); 8 CFR 242.16(d) (Supp. 1963)). The lodged charge is based upon section 241(a)(2) of the Act which in pertinent part provides for the deportation of an alien who "is in the United States in violation of this chapter [Chapter 12 of Title 8—Immigration and Nationality Act] or in violation of any other law of the United States." Notice of the lodged charge informed respondent that he was deportable under section 241(a)(2) of the Immigration and Nationality Act, "in that, after temporary admission as an agricultural laborer under Title 5 of the Agricultural Act of 1949, as amended, you have remained in the United States for a longer time than permitted" (Ex. R–1). Two factual allegations in addition to those previously set forth in the order to show cause stated that respondent had been "admitted as an agricultural laborer pursuant to Title 5, Agricultural Act of 1949, as amended, and permitted to remain in the United States until January 4, 1963" (the original allegation had not designated the authority under which respondent had been admitted and had shown the authorized stay as ending on December 20, 1962); and that he had "remained in the United States beyond January 4, 1963, without permission" (the original allegation had merely stated that respondent had failed to depart) (Exs. 1, R–1).

At the hearing, counsel asked to be informed whether the Service in using section 241(a)(2) of the Act was charging a violation of the Immigration and Nationality Act or another law such as the Agreement. The trial attorney stated that the lodged charge and allegations accompanying it, put respondent upon sufficient notice; the trial attorney refused to furnish any further information (pp. 20–22). While it was error for the trial attorney to fail to answer counsel's inquiry by pointing out that it was a violation of the Agricultural Act which was relied upon, we do not believe that counsel was misled or hampered in his defense. His brief reveals his understanding that the respondent was "charged by the Service with a violation of the Agricultural Act of 1949, as amended" (p. 11, brief October 10, 1963); and we note that counsel advanced a defense at the hearing based upon the Agricultural Act (p. 23). We conclude respondent had proper notice of the charge against him.[2]

---

[2] Since appeals by 13 other respondents, represented by the same counsel defended by the same brief, and involving the same issues are pending before us, and since this order is planned to serve as a precedent for the disposition of the other appeals, we shall, to prevent unnecessary discussion of the issue before us, now list information on this point relating to the other appeals.

At the separate hearings on four cases held on July 11, 1963 before Special Inquiry Officer Leone, counsel stated in three cases that he had "anticipated" the lodged charge and was ready to defend it (Becerra-Vasquez—A–13023737, p. 26; Jacobo Villalobos—A–13564268, p .16; Martinez-Torres—A–13565183, p. 16), in the fourth case, counsel raised no issue as to the nature of the charge, but

As a further defense counsel contends that although the Service charged respondent with being deportable for violation of the Agricultural Act, the special inquiry officer did not find respondent so deportable, but instead found him deportable as a nonimmigrant under the Immigration and Nationality Act. Counsel's conclusion that the special inquiry officer found respondent had been admitted as a nonimmigrant is deduced from the fact that the special inquiry officer stated that respondent had been admitted subject to the immigration laws. The contention is not valid. The special inquiry officer's order reveals that it was a violation of the Agricultural Act and the regulations implementing it which was the basis for deportation (pp. 5-6, special inquiry officer's order of July 17, 1963). We find, therefore, that the respondent was properly found deportable on the lodged charge.[3]

The defense under the Agricultural Act is based on counsel's belief that a worker cannot be found to be in the United States in violation of the Agricultural Act unless he is first given the hearing provided by article 30 of the Agreement (Ex. R-4, p. 17). In brief, this article provides that no employer or worker shall be found to have violated the Agreement without investigation by the Secretary of Labor of a complaint filed by the employer or worker, and that charges are to be supplied to the alleged violator who has the right to a hearing. The validity of the complaint is to be judged by the Secretary of Labor and the Mexican consul. If they are unable to reach a satisfactory solution, appeal is provided to the Secretary of Labor and a representative of the Mexican Government in Washington, D.C. Counsel believes that

_____

stated he was ready to proceed, and he did make his defense under the Agricultural Act (Sanchez-Bonilla—A-13564262, pp. 13-14).

At the joint hearing on four cases held before Special Inquiry Officer Myron on the morning of July 17, 1963, counsel merely asked the trial attorney whether the Service relied upon only the lodged charge and was told that such was the case (p. 36, Moran-Martinez—A-13563192; Ochoa-Molina—A-13560991; Ortiz-Calderon—A-13563190; Sandoval-Baron—A-13565131).

(The joint hearing of respondent and the two other aliens was held before Special Inquiry Officer Myron, the afternoon of July 17, 1963.)

At the separate hearings on the three cases held on July 23, 1963 before Special Inquiry Officer Mattel, counsel was either informed by the trial attorney that violation of the Agricultural Act was involved (Castro-Lares, A-13573053, p. R-4; Diaz-Velasquez, A-13568598, p. R-7) or indicated his awareness that the Agricultural Act was involved (Gonzalez-Jaime, A-13567806, R-8-9).

[3] Special Inquiry Officer Leone who, on July 11, 1963, heard the first group of cases and before whom no issue was raised as to what law was involved, relied upon the violation of the immigration regulation based on the Agricultural Act. Special Inquiry Officer Myron disposing of the cases heard the morning of July 17, 1963 specifically found a violation of the Agricultural Act and the regulations implementing it (pp. 4-5). Special Inquiry Officer Mattell, found a violation of the Agricultural Act (p. 6).

763-456—65——26

failure to follow this procedure before a deportation hearing is started is a violation of section 405 of the Immigration and Nationality Act which states that the Immigration and Nationality Act "shall not be construed to repeal, alter, or amend Title V of the Agricultural Act of 1949, as amended". Counsel believes that the holding of a deportation hearing without first finding a violation of the Agricultural Act under the terms of article 30, amounts to a repeal of article 30.

We do not believe that article 30 applies to a deportation matter. It appears clear from a reading of the article that it provides a procedure to determine rights between an employer and employee, that it concerns problems which would arise between the employer and employee, that it involves the Department of Labor and the Mexican consul, but that it does not apply where parties are the Mexican worker and the Immigration and Naturalization Service and the issue is whether there has been an immigration violation. There is nothing inconsistent between article 30 of the Agreement which implements a law having no reference to the deportation of an alien (other than to make him subject to the immigration laws) and the provisions of the Immigration and Nationality Act relating to the deportation of an alien. Therefore, application of the deportation provisions of the Immigration and Nationality Act does not constitute a repeal, alteration or amendment of the Agricultural Act.

The position of the Board concerning section 248 of the Act (8 U.S.C. 1258 (Supp. IV)) has been set forth in our previous order; further discussion can be of no benefit.

ORDER: It is ordered that no change be made in the order of the special inquiry officer.